**United States District Court**
**Western District of Virginia**
Harrisonburg Division

|  |  |  |
|---|---|---|
| _____ | ) | |
|  | ) | |
| **JESSICA WILLIS**, *ex rel*. **J.C.**, | ) | Civil No.: 5:11cv00071 |
|  | ) | |
| *Plaintiff*, | ) | |
| v. | ) | **REPORT AND** |
|  | ) | **RECOMENDATION** |
|  | ) | |
| **MICHAEL ASTRUE**, | ) | |
| Commissioner, Social Security Administration, | ) | |
|  | ) | By: Hon. James G. Welsh |
| *Defendant* | ) | U. S. Magistrate Judge |
|  | ) | |
| _____ | ) | |

Jessica Willis brings this civil action on behalf of J.C. (the "plaintiff") challenging a final decision of the Commissioner of the Social Security Administration (the "agency") denying an application for Supplemental Security Income ("SSI") on behalf of a child under the age of eighteen, under Title XVI of the Social Security Act, as amended (the "Act"), 42 U.S.C. §§ 1381 *et seq.*; 20 C.F.R. § 416.1481. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The record shows that the application was protectively filed on September 29, 2009, alleging disability beginning July 1, 2007, when the child was eleven years of age. (R.16,17,30,72,155,176,239). The claim was denied both initially and on state agency reconsideration. (R.72-79,80-95,97-100). [1] Following an administrative hearing (R.30-71), the

---

[1] "R." refers to the certified record of administrative proceedings relating to this case.

Case 5:11-cv-00071-MFU-JGW   Document 12   Filed 08/07/12   Page 1 of 19   Pageid#: 408

presiding administrative law judge ("ALJ") issued an unfavorable written decision (R.16-27) dated May 28, 2010. A timely request for Appeals Council review was subsequently denied (R.1-4), and the unfavorable written decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

By standing order of reference this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have moved for summary judgment, and each has filed a supporting memorandum of points and authorities. No request was made for argument and the case is deemed submitted for decision based on the motion papers and memoranda. *See* WDVa Gen. R. 4(c)(2).

I.   **Summary and Recommendation**

On appeal, the plaintiff contends that the ALJ's adverse determination is not supported by substantial evidence because he failed to identify and discuss individually the relevant "listed impairments, [2] because he based his credibility determinations on "improper standards of evaluation," and because he failed to explain his findings in three areas of functioning, including attending and completing tasks, caring for self, and interacting and relating with others. (No.8,

---

[2] The Listing of Impairments ("the listings") is in appendix 1 of subpart P of part 404 of 20 C.F.R. It describes for each of the major body systems impairments that the agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525 and § 416.925.

pp. 6-18). For the reasons expressed herein, these arguments are without merit, and it is RECOMMENDED that the Commissioner's decision be AFFIRMED, the Commissioner's motion for summary judgment be GRANTED, the plaintiff's motion for summary judgment be DENIED, and this cause STRICKEN from the docket of the court.

## II.     Standard of Review

The court's review in this case is limited to determining whether the Commissioner's factual findings are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4$^{th}$Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2$^d$640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4$^{th}$Cir. 1990) (quoting *Laws*, 368 F.2$^d$at 642). The court is "not at liberty to re-weigh the evidence . . . or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## III.     Evidence Summary

J.C., a minor child born in 1995, was diagnosed in November 2007 by his pediatrician to be having a panic attack. (R,244,286,305). At the time he was given an antidepressant prescription and referred for "therapy." (*Id*.; *see also* R.256,305). At the same time he was also

being seen by Ingrid Iwanow, M.D., an otolaryngologist at Shenandoah Head & Neck Clinic, for tonsillectomy and adenoidectomy follow-up and for treatment of chronic ear pain. (R.258-277). Her treatment notes, variously dated between October 2007 and August 2009, consistently show the plaintiff to be well-developed, well-nourished and groomed, in no apparent acute or chronic distress, and to exhibit a normal ability to communicate. (*Id.*).

The plaintiff's further medical record is extremely limited and contains only one reference to any follow-up by the plaintiff's parents to the pediatrician's referral of the child for psychotherapy. In his February 2010 mental status form responses, Martin Mayfield, Ed.D., a school psychologist, stated that he had started treating the plaintiff on a twice monthly basis in November 2007 and that he last saw the plaintiff on June 3, 2008. (R.305). Dr. Mayfield diagnosed the plaintiff's mental health condition to be a generalized anxiety disorder with an agoraphobic [3] and panic component that began in the "Fall of 2007" and for which Prozac had been prescribed with a "fair" response. (R.252,305).

On the basis of his observations and treatment, Dr. Mayfield found the plaintiff to exhibit "normal" childhood development, to show no signs of antisocial behavior, to be capable of "perform[ing] all tasks at home," to display "normal" intelligence, memory, speech, language, motor skills and appearance, and to display a "normal" activity level, ability to focus attention, ability to persist on tasks, and ability to accomplish tasks at a reasonable pace. (R.305-308). He noted that the plaintiff had an anxious demeanor, a dependant relationship with his parents,

---

[3] A panic disorder subset involving a fear of having a panic attack in an environment the individual perceives to be difficult or embarrassing to escape. *See* Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") (American Psychiatric Association 1994), code 300.21.

4

social isolation due to his panic disorder, and a "good" mood with no oppositional behavior "unless stressed to go to school." (R.306-308).

In Dr. Mayfield's professional opinion a homebound schooling program for the plaintiff was contraindicated, and he specifically recommended against it. (R.247,250,252).

With his parents' approval, for the 2008-2009 school year (7th Grade) the plaintiff was placed in a special education program that included *inter alia* the assistance of a special education case manager, seating the child in an area free of distraction, and adoption of the immediate goal to increase both the child's time spent in class and the number of days he attended school. (R.245-253).

Consistent with Dr. Mayfield's 2007-2008 assessment of the plaintiff's mental health issues, the clinical records of Rauf Cheema, M.D., (Sterling Mental Health) for the period between November 2009 and April 2010 show no significant change of condition. (R.301-303,314-315). During this same five-month period, Dr. Cheema saw the plaintiff on seven separate occasions. Each time the plaintiff was found to be fully oriented, to demonstrate appropriate rapport and affect, not to appear depressed, and to exhibit coherent speech, goal-oriented thought content and no gross cognitive defects. (*Id*.). Dr. Cheema also found the plaintiff to have a had a "good response to the medication regime with no side effects, to have only "moderate" social environment problems, and to be functioning at a level of 55 on the GAF scale. [4]

---

[4] The Global Assessment of Functioning ("GAF") is a numeric scale which ranges from 0 to 100 and is used by mental health clinicians and doctors to represent the judgment of an adult individual's overall level of

5

As noted by the ALJ as part of his domain-by-domain [5] consideration of the plaintiff's moderate symptoms and generally moderate level of functioning, the record in this case contains the joint questionnaire responses of a middle school teacher and nurse dated February 23-24, 2010. (R.188-195). Therein, they rated the plaintiff's abilities according to the six domains of functional equivalence used by the agency in considering a child's disability claim. In the acquiring and using information domain, they rated the plaintiff as having no problem with five of the nine activities they assessed and only "slight" problems with the other five. (R.189; *see also* 22). In the attending a completing tasks domain, they made no rating in three of the thirteen listed activities, "slight" problems in seven others, and an "obvious" problem only in the three of the listed activities. (R.190; *see also* 23). In the interacting and relating with others domain, they rated the plaintiff as having no problem with six of the thirteen listed activities, a "slight" problem with three, an "obvious" problem with three others, and a "serious" problem only with the making and keeping friends activity. (R.191; *see also* 24). In the moving about and manipulating objects domain, they rated the plaintiff as having an "obvious" problem with all seven of the listed physical activities. (R.192; *see also* 25). In the caring for himself domain, they rated the plaintiff as having "slight" problems with four of the listed activities, an "obvious"

---

"psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV at 932. A specific GAF score represents a clinician's judgment of an individual's overall level of functioning; for example a GAF of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV at 32.

[5] For child's SSI disability purposes, functional equivalence is determined by rating a child's abilities with respect to six "domains": (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating Well With Others; (4) Moving About and Manipulating Objects; (5) Caring for Self; and (6) Health and Physical Well-Being. Disability is established if the child has an "extreme" degree of limitation in one area of functioning or "marked" limitation in two areas. *See* 20 C.F.R. § 416.926a.

problem with one, a "serious" problem with three others, and a "very serious" problem only with using appropriate coping skills to meet the daily demands of the school environment. (R.193; *see also* 26). And in the health and physical well-being domain, they noted that in the sixth grade the plaintiff had used a inhaler for wheezing when needed, took no other medications in school and had been diagnosed with an anxiety/panic disorder; additionally they indicated that they believed the plaintiff was then in a homebound school program. (R.194; *see also* 26).

Assessments of the plaintiff's limitations were also made by state agency psychologists in March and June 2010. (R.72-79,80-88). In their written reviews, each analyzed the record in some detail; each made the required six-domain evaluation, and each concluded that the plaintiff did not meet the applicable disability definition. (*Id.*). Among other things, in making her functional assessment the second state agency psychologist took specific note of both the fact that the plaintiff was in homebound schooling "because it was easier for him and not because of an inability to go to school" and the fact that attending school, rather than going to school at home, had been "recommended . . . to help [the plaintiff] . . . better to confront his fears. . . ." (R.87).

Generally consistent with the assessments and opinions outlined herein above, in the function reports submitted as part of the child's SSI claim his mother described his daily activities as "sometimes" limited due to "trouble going places," that on "some occasions" he does not want to get out of bed or shower, that he "sometimes" does well and sometimes poorly

with large crowds, that his inability to attend school is due to "anxiety" [6] in a classroom setting, that he complains "sometimes" that school is hard, that he is a loving and caring child towards family, friends and pets, and that he has no problem caring for all of his personal needs, is helpful around the house, and "most times" finishes what he starts. (R.170,172-174,201,211).

Also consistent with the previously outlined assessments and opinions, at the administrative hearing the plaintiff's father testified that his son had no problems moving or manipulating objects, was able to use tools, was able to read at grade level, was well-behaved and respectful of authority, was currently going to school after hours in order to acclimate himself to the school environment, and his son had never been hospitalized for any mental health problem. (R.37,34,38,40,43,46,47).

The plaintiff's observed behaviors at the time he was interviewed by an agency claim representative on November 12, 2009 (R.177-178) and his hearing testimony in large measure also support the assessments and opinions outlined hereinabove. For example, the claims representative found the plaintiff to be able to participate in the face-to-face interview without any problems, to be talkative, to have good eye contact, to have appropriate questions about Social Security and how it worked, and to exhibit no signs either of anxiety or panic. (R.177-178). At the hearing the plaintiff testified that he was able to read a grade level, send and receive test messages, follow directions, pay attention, organize his room, care for himself, relate with

---

[6] As the Commissioner notes in his brief, nothing in the plaintiff's medical record or school record documents any event which would suggest that the plaintiff has ever experienced an "anxiety" attack either at home, in school or in public. (No 8, p.6).

friends, ride a bicycle, assemble toys, and play board and word games, but he gets sidetracked "sometimes," is overweight, and is very shy. (R.36,38-42,46-48,51).

**IV.     Analysis**

**A.**

Relevant to the plaintiff's claim, a child under the age of eighteen is considered "disabled" for purposes of eligibility for SSI, if he has a medically determinable physical or mental impairment [7] which results in *marked* and *severe* [8] functional limitations and which have lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). And in making this eligibility determination, a three-step sequential evaluation process is must be followed. 20 C.F.R. § 416.924.

First, the child must not be engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). Second, the child must suffer from one or more *severe* impairments. [9] 20 C.F.R. §

---

[7] An *impairment* is a physical ailment afflicting the claimant. *See* 42 U.S.C § 1382c(a)(3)(A); 20 C.F.R. §§ 416.921– 416.923.

[8] A *limitation* is the functional consequence of an impairment or combination of impairments. *See* 42 U.S.C. § 1382c(a)(3)A(C)(i); 20 C.F.R. § 416.924.

[9] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. §§ 416.920(c).

416.924(c).  And third, the child's *"impairment(s) must meet, . . .or functionally equal"* [10] impairment listed in the listings. [11]  20 C.F.R. § 416.924(d).

As noted herein above, in making an assessment of functional equivalence in a child's claim the agency's regulations direct the fact finder to consider how the child functions in terms of six general "domains" (broad areas of functioning intended to capture all that a child can or cannot do).  For an impairment to be functionally equivalent to an impairment of listing-level severity, the applicable regulations further require that it must result either in "marked" limitations two domains of functioning or result in "extreme" limitations in one domain.  20 C.F.R. § 416.926a(a).  Also as herein above noted, a "marked" limitation is more than moderate but less than extreme, and for it to be "marked" it must interfere seriously with the child's ability independently to initiate, sustain, or complete activities (20 C.F.R. § 416.926a(e)(2)); an "extreme" limitation is more than marked, and a child has an "extreme limitation" in a domain when his impairment interferes very seriously with his ability independently to initiate, sustain, or complete activities (20 C.F.R. § 416.926a(e)(3)).  Under the regulations the "extreme limitation" rating is given to the worst limitations, but it does not necessarily mean a total lack or loss of ability to function.  *Id*.

In the instant case, at the first and second sequential steps the ALJ determined that the child was not working and had *severe* impairments, including an anxiety disorder, agoraphobia

---

[10]  As amended, effective January 1, 2001, the agency's regulations essentially eliminated medical equivalence proceedings and directed the analysis of all children's claims under the functional equivalence rubric. *Encarnacion ex rel, George v. Barnhart*, 331 F.3d 78, 85 n. 3 (2nd Cir. 2003 (citing SSI: Determining Disability for a Child Under Age 18, 65 Fed. Reg. 54,747, 54,755 (Sept. 11, 2000)).

[11]  *See* footnote 2.

and a social phobia. (R.19). After making a detailed review and assessment of the evidence in the record, at the third sequential step, he concluded that the child's impairments, neither singularly nor in combination, functionally equaled a listing and that J.C. was not disabled within the meaning of the Act. (R.19-27).

Following the "whole child" approach set forth in Social Security Ruling ("SSR") 09-1p,[12] the ALJ considered "all of relevant evidence in the case record;" he comparatively evaluated the child's functioning in all settings and times; he assessed the interactive and cumulative effects of the child's impairments in all affected domains; he considered the type, extent and frequency of the functional help needed by the child, and he presented detailed findings with respect to J.C.'s limitations and their severity --- domain by domain. (R.19-29). At the conclusion of this process, the ALJ found the child to have no limitations in the domains of moving about and manipulating objects; he found the child to have less than marked limitations in the domains of acquiring and using information, attending and completing tasks, caring for self, and health and physical well-being; and he found the child to have marked limitations only in the domain of interacting and relating to others. (*Id*.).

Based on these conclusions, the ALJ further determined that J.C. in fact did not have an impairment or combination of impairments that results in "marked" limitations in two domains

---

[12] SSR 09-1p provides: The functional equivalence rules require us to begin by considering how the child functions every day and in all settings compared to other children the same age who do not have impairments. After we determine how the child functions in all settings, we use the domains to create a picture of how, and the extent to which, the child is limited by identifying the abilities that are used to do each activity, and assigning each activity to any and all of the domains involved in doing it. We then determine whether the child's medically determinable impairment(s) accounts for the limitations we have identified. Finally, we rate the overall severity of limitation in each domain to determine whether the child is "disabled" as defined in the Act.

of functioning or an "extreme" limitation in one domain; thus the child's impairments did not functionally equal the listings found in 20 C.F.R., Part 404, Subpart P, Appendix 1, and that the child, therefore, was not disabled and not entitled to receive SSI benefits.

**B.**

In his challenge to the ALJ's non-disability finding, the plaintiff first contends that the ALJ erred by failing to "identify the relevant listed impairments." This contention is without merit. First, other that the detail specified in 42 U.S.C. § 405(g)(1) [13] there is no hard and fast rule as to the degree of specificity required in an ALJ's findings. Second, throughout the evaluation process, it is the child-plaintiff -- not the ALJ, that bears the burden to prove that his impairments satisfy the criteria of a listing. *E.g., Johnson v. Comm'r,* 2008 U.S. Dist. LEXIS 115989, at *4 (EDMich., Dec. 23, 2008) (citing *Boyes v. Sec'y*, 46 F.3$^d$ 510, 512 (6th Cir. 1994); *Witt v. Barnhart*, 2005 U.S. Dist. LEXIS 23820, at *5,6 (WDVa. Oct. 18, 2005); *see Sullivan v. Zebley*, 493 U.S. 521, 530-531 (1990). Third, the plaintiff's contention that the Fourth Circuit's decision in *Cook v.* Heckler, 783 F.2$^d$ 1168, 1173 (4th Cir. 1986), [14] mandates a finding that the ALJ erred in the instant case by failing identify the specific listings he considered is misplaced.

---

[13] 20 C.F.R. § 405(g)(1) provides: "The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this title [42 USCS §§ 401 et seq.]. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based."

[14] Although there was ample evidence in *Cook* to support a finding that the claimant's arthritis met or equaled one of the listed impairments, the ALJ found that it did not. *See Cook,* 783 F.2$^d$at 1172. After finding that the ALJ erred by failing to include in the decision a statement of the reasons for the decision that Cook's arthritis did not meet or equal a listed impairment, the Fourth Circuit held that the ALJ should have identified the relevant listed impairments and then compared each of the listed criteria to the evidence of Cook's symptoms, and without such an explanationit was impossible to tell whether there was substantial evidence to support the determination. *See Cook*, 783 F.2$^d$at 1172-1173.

12

While the ALJ has a duty to develop the record, he is not required to act as the plaintiff's attorney. *See Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994) ("the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record."). Moreover, in the instant case – unlike in *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986), the ALJ thoroughly discussed the evidence relating to the plaintiff's impairments and limitations, and the record clearly demonstrates his consideration of the appropriate issues. (R.20-27). *See Crockett v. Astrue*, 2011 U.S. Dist. LEXIS 60308, at *32-34 (WDVa. June 1, 2011)\ (adopted 2011 U.S. Dist. LEXIS 70514 (WDVa. June 30, 2011)).

Thus, irrespective of any decisional obligation on the part of the ALJ to state the reasons why the plaintiff's mental disorder and associated limitations did not equal a relevant § 12.00 listing, substantial evidence supports the ALJ's conclusion. He thoroughly discussed the evidence relating to the plaintiff's non-severe and severe impairments. (R.19-21). He referenced the objective medical record, including the fact that the plaintiff had been diagnosed to have a panic disorder with agoraphobic tendencies, the fact that the plaintiff takes prescription antidepressants and undergone counseling, and the fact that the plaintiff has exhibited an anxious demeanor, social isolation and emotional changeability. (R.19,21). He took note of the plaintiff's assessment of functioning score (GAF) of 55 [15] and the fact that the plaintiff is in a homebound school program due to his panic attacks. (R.21). He discussed the plaintiff's written statements and testimony, the testimony of family members, and the joint questionnaire responses of his teacher and school nurse. (R.20,22,23,24,25,26). He took note of the agency's regulations defining a "marked" limitation to be equivalent to functioning at least two standard

---

[15] This GAF score suggests no more than moderate symptomology. *See* Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM IV"). p. 34.

13

deviations below the mean (20 C.F.R. § 416.926a(e)(2)) and defining an 'extreme' limitation to be equivalent to functioning at least three deviations below the mean (20 C.F.R. § 416,926a(e)(3)). (R.18-19). He discussed, and on the basis of their consistency with the record as a whole, gave "great weight" [16] to the professional opinions of the state agency psychological consultants. (R.21). In addition, he thoroughly discussed the plaintiff's degree of limitation in each of the six domains. (R.21-27). Read as a whole, therefore, the decision of the ALJ more than minimally establishes that the appropriate factors were considered in finding that the plaintiff's limitations did not equal a listed impairment.

## C.

On appeal, the plaintiff next argues that three of the ALJ's domain findings were not based on substantial evidence. It is his contention the ALJ failed to explain why his limitations in the domain of interacting and relating with others was not "extreme," and similarly why his abilities in the domains of attend and complete tasks and self-care were not "marked" limitations. (No. 8, pp. 7-13). In essence he argues that the ALJ failed to recognize that homebound schooling due to a panic disorder is *ipse dixit* "within the definition of an 'extreme' limitation," and that the ALJ also failed to explain why certain statements of the plaintiff's family [17] and teacher did not compel a "marked" limitation finding in the domains of attend and complete and self-care.

---

[16] State agency physicians and psychologists are deemed by agency regulations to be "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i).

[17] This contention fails to recognize that 20 C.F.R. § 416.929 provides the exclusive standard for evaluating credibility, and contrary to the plaintiff's argument, subjective statements either by the plaintiff or his family cannot alone establish disability. *See Craig v. Chater*, 76 F.3$^d$ 585, 591-593 (4th Cir. 1996). Moreover, in the instant case the ALJ determined that the objective evidence, including *inter alia* the teacher/nurse questionnaire responses and medical history did not support fully support the testimony and statements concerning the plaintiff's difficulties with panic attacks, stress and other subjective symptoms. (R.20-21,22,23,24,25,26).

14

In contrast, as the Commissioner points-out in his brief, the ALJ in fact explained each of these contested domain findings. (No.10, pp. 13-15). In the domain of interacting and relating with others, the ALJ based his "marked" limitation finding primarily on the February 2010 joint teacher/nurse questionnaire rating in this domain. (R.19; *see* R.191). Similarly, the ALJ's "less-than-marked" limitation findings in the ability to attend and complete tasks and in the ability to self-care domains were based in part on the joint teacher/nurse ratings in these domains. (R.23,26; *see* R.190,193). As the Commissioner also noted, both of these "less-than-marked" findings by the ALJ were also based in part on various relevant statements made by the plaintiff and by his parents. (R.23,26).

Succinctly put, the ALJ's findings concerning each of the three contested domains is supported by substantial evidence, and this challenge to the ALJ's decision is also without merit.

### D.

Contending that it was not based on substantial evidence, the plaintiff also attacks the ALJ's assessment of the plaintiff's credibility. As support for this contention, the plaintiff makes a two-part argument. First, he points-out that the decision asserts that the plaintiff's statements are at least in part "inconsistent" with a non-existent "residual functional capacity assessment.[18]

---

[18] The plaintiff argues in his brief, the ALJ's decision erroneously speaks to the plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms as not being credible "to the extent they are inconsistent with the **above-referenced functional capacity assessment**" (R.20-21) (emphasis added). Literally, the plaintiff is correct; there was no "above-referenced" assessment by the ALJ and more precisely the ALJ should have described the assessment to be a "limitation assessment." The ALJ's credibility assessment, however, was not based on this one misstatement. It neither misstated the legal principles nor the standards that should have guided the ALJ in making his factual findings. *See generally Coffman v. Bowen*, 829 F.2$^d$ 514, 518 (4th Cir. 1987). It neither misstated the evidence nor had any bearing on the ALJ's assessment of plaintiff's impairments. *See Harrold v. Astrue*, 2012 U.S. Dist. LEXIS 3895, at *28-29 (NDFla. Jan. 11, 2012). Moreover, substantial evidence fully supports the ALJ's assessment of the plaintiff's credibility on the basis of the inconsistencies between his testimony and the six-domain assessment of the plaintiff's limitations. The ALJ's misstatement thus represents at most a harmless error.

15

(No. 8, p.13).  Second, he argues that his testimony concerning the intensity, persistence and limiting effects of his symptoms was fully consistent both with the medical record and with witness statements and testimony. (No. 8, pp. 14-18).

In addressing this issue, it must be noted at the outset that the Fourth Circuit requires a reviewing court to give great deference to an ALJ's credibility determinations and assess them only as to whether they are supported by substantial evidence. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997).  Thus, an ALJ's credibility determination "should be accepted by the reviewing court absent exceptional circumstances."  *Id*. (quoting *NLRB v. Air Products & Chemicals, Inc*., 717 F.2d 141, 145 (4th Cir. 1983); *see also Bieber v. Dep't. of the Army*, 287 F.3d 1358, 1364 (Fed.Cir. 2002) ("credibility determinations of an ALJ are virtually unreviewable on appeal"); *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1149 (Fed.Cir. 1997) (reviewing courts "are not in a position to re-evaluate . . . credibility determinations, which are not inherently improbable or discredited by undisputed fact").  Giving this required deference to credibility findings, it is obvious from the decision as a whole that the ALJ's credibility assessment is neither unreasonable nor contradicted by other findings made by the ALJ.

Moreover, the ALJ's finding is consistent with the two-step process required by the agency's regulations for evaluating the credibility of the plaintiff's claims regarding his symptoms.  *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 2001).  He first determined that the plaintiff suffers a medical impairment that could be reasonably expected to produce the plaintiff's alleged symptoms (R.20).  *Id*.  Then, in accordance with the second part of the analysis, he evaluated the plaintiff's statements about the intensity and persistence of his subjective symptoms and their functional consequences.  In doing so the ALJ appropriately took

into account "all of the evidence relevant to the plaintiff's limitations, including his medical history, the medical signs, the objective medical evidence, the treatment record, his daily activities, the various written statements in the record and the hearing testimony. (R.19,20-21). *See Craig*, 76 F.3d at 595; *see also* 20 C.F.R. § 416.929. Having, therefore, applied the correct legal standard to the plaintiff's allegations of a debilitating mental health condition, the ALJ's conclusions are supported by substantial evidence and the plaintiff's objection is without merit.

## V. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The plaintiff was born in 1995; he was a school-age child on the date his SSI application was filed and was an adolescent at the time of the ALJ's written decision (20 C.F.R. § 416.926a(g)(2)(iv)-(v));

2. The plaintiff has not engaged in substantial gainful activity since the date of his application (20 C.F.R. §§ 416.924(b) and 416.971 *et seq.*);

3. The plaintiff has the following severe impairments: a generalized anxiety disorder, agoraphobia and a social phobia (20 C.F.R. §§ 416.924(c));

4. The plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926a);

5. The plaintiff does not have an impairment or combination of impairments that functionally equals the listings[19](20 C.F.R. § 416.924(d) and 416.926a);

---

[19] *See* footnote 6.

6. The ALJ's determination of a *marked* limitation in the domain of Interacting and Relating with Others is supported by substantial evidence;

7. The ALJ's determination of a *less-than-marked* limitation in the domain of Attending and Completing Tasks is supported by substantial evidence;

8. The ALJ's determination of a *less-than-marked* limitation in the domain of Care for Self is supported by substantial evidence;

9. The ALJ's credibility assessments are supported by substantial evidence;

10. The plaintiff has not been disabled, as defined in the Social Security Act, from the date his application was filed through the date of the ALJ's decision (20 C.F.R. § 416.924(a));

11. Substantial evidence in the record supports the Commissioner's final decision, and it is free of legal error;

12. The plaintiff has not met his burden of proving a disabling condition on or before the decision date; and

13. The final decision of the Commissioner should be affirmed.

## VI. Transmittal of the Record

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. **Any adjudication of fact or conclusion of**

**law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: This 7th day of August 2012.

/s/   *James G. Welsh*
United States Magistrate Judge